UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:11-CR-113-TAV-HBG-1 |
| DANIEL COLE, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant's pro se motion for compassionate release [Doc. 215]. The United States has filed a response in opposition [Doc. 217], and defendant has filed a reply [Doc. 221]. The matter is now ripe for adjudication. For the reasons set forth more fully below, defendant's motion [Doc. 215] is **DENIED**.

**I.   Background**

On October 17, 2011, defendant pleaded guilty[1] to one count of conspiracy to distribute and possess with intent to distribute oxycodone and methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) (Count 1), three counts of aiding

---

[1] In his reply brief, defendant contends, for the first time, that his guilty plea was coerced [Doc. 221, p. 2]. However, "Section 2255 is the primary avenue for relief for federal prisoners protesting the legality of their sentence[.]" *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). Specifically, § 2255 allows a federal prisoner to "vacate, set aside or correct the sentence" if it was imposed in violation of the Constitution or laws of the United States, the Court was without jurisdiction to impose such sentence, the sentence was in excess of the maximum authorized by law, or it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Accordingly, defendant must raise any challenge to his conviction and sentence based on the alleged involuntariness of his plea in a separate motion pursuant to § 2255.

and abetting distribution of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2 (Counts 3, 5, and 8), one count of distribution of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 4), three counts of aiding and abetting distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c) and 18 U.S.C. § 2 (Counts 6, 7, and 9), one count of aiding and abetting possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2, and two counts of aiding and abetting the possession a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 2 and 11) [Docs. 31, 36]. Defendant received a sentence of 135 months' imprisonment for the drug convictions, a consecutive 60-month sentence for his first § 924 conviction, and a consecutive 300-month sentence for his second § 924(c) conviction, for a total of 495 months' imprisonment, to be followed by 6 years of supervised release [Doc. 99].

As a basis for compassionate release, defendant argues that the change in law regarding 18 U.S.C. § 924(c) "stacking"[2] qualifies as extraordinary and compelling circumstances [Doc. 215, pp. 10–19]. He also notes his rehabilitative efforts in support of

---

[2] Before the First Step Act, a defendant's first § 924(c) conviction carried a mandatory-minimum sentence of five years' incarceration, and each additional § 924(c) conviction carried a sentence of twenty-five years' incarceration, even if the defendant's § 924(c) convictions were part of the same indictment. 18 U.S.C. § 924(c) (2015). Under the First Step Act's new framework, only a defendant who has a prior final § 924(c) conviction is subject to the escalating mandatory-minimum sentences for a subsequent § 924(c) conviction. First Step Act, § 403(a) (codified at 18 U.S.C. 924(c)(1)(C)). The changes do not apply to defendants who had already been sentenced prior to the First Step Act's passage. First Step Act, § 403(b) (codified at 18 U.S.C. § 924 notes).

2

his request [*Id.* at 20–21]. Finally, defendant seeks compassionate release based on his wife's medical conditions, which he states include having a shunt in her head, multiple surgeries including one to reposition the shunt, and suffering from a stroke while incarcerated as a result of this case [*Id.* at 23]. Specifically, defendant states that his wife's current caregiver is her sister, Cheryl Mason, but Ms. Mason has been diagnosed with stage 4 lung disease and has been given only two years to live [*Id.*].

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 44].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three

4

prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, as no policy statement applies to defendant-filed motions for compassionate release, the second requirement plays no role. *Id.*

**II. Analysis**

    **A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion**

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

The United States waives the exhaustion requirement in this case [Doc. 217, p. 6]. Thus, the Court may consider the merits of defendant's request.

    **B. Extraordinary and Compelling Reasons**

As noted above, the Court need not consider all three statutory prerequisites if any one would serve as a basis for denial. *Elias*, 984 at 519. In this instance, the Court finds that defendant has not established extraordinary and compelling reasons for compassionate release. In reaching this decision, the Court recognizes that it has discretion

5

to determine what constitutes extraordinary and compelling reasons. *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

Defendant first argues that the First Step Act's change to § 924(c)'s "stacking" requirement satisfies the extraordinary and compelling requirement for compassionate release. Two recent Sixth Circuit opinions, *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) and *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021), have addressed the issue of whether non-retroactive statutory penalty changes, either on their own or in conjunction with other factors, qualify as an extraordinary and compelling reason which justifies compassionate release. *Tomes* held that the non-retroactive nature of § 401 of the First Step Act, which reduced the penalties of certain drug crimes, could not qualify as an extraordinary and compelling reason for the purposes of compassionate release. *Tomes*, 990 F.3d at 505. In contrast, *Owens* held that a trial court may consider such non-retroactive statutory amendments in conjunction with any other applicable factors and determine whether, under the totality of the circumstances, a defendant established extraordinary and compelling reasons. *Owens*, 996 F.3d at 763.

However, in *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021), the Sixth Circuit discussed the apparent split created by *Tomes* and *Owens*. The *Jarvis* Court held that *Tomes*, which was decided before *Owens*, controlled. *Jarvis*, 999 F.3d at 445–46. The *Jarvis* Court went on to hold that *Tomes's* holding was not dicta and found that *Tomes* "excluded non-retroactive First Step Act amendments from the category of extraordinary

or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors." *Id.* at 446.

Thus, under the precedent established by *Tomes* and *Jarvis*, this Court cannot consider the non-retroactive amendments to the penalties imposed by 18 U.S.C. § 924(c) for the purpose of determining whether defendant has satisfied the extraordinary and compelling requirement.[3] However, whether the Court is guided by *Tomes* and *Jarvis*, and disregards defendant's sentencing argument, or by *Owens*, and considers defendant's arguments in conjunction with his wife's medical concerns and his efforts at rehabilitation, the Court's ruling would be the same.

Next, defendant points to his efforts at rehabilitation in support of his requestion for compassionate release [Doc. 215, pp. 20–21]. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for compassionate release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). While the Court recognizes defendant's efforts at self-improvement, the Court does not find defendant's post-conviction rehabilitation so exceptional as to rise to the level of extraordinary and compelling.

Thus, the only remaining potential extraordinary and compelling reason for granting compassionate release is defendant's alleged need to serve as a caretaker for his wife, who

---

[3] While *Tomes* involved § 401 of the First Step Act, which changed the penalties for certain drug crimes, *Jarvis* involved § 403 of the First Step Act, which changed the penalties at issue in § 924(c) stacking cases. *Jarvis*, 999 F.3d at 443–44.

suffers from various ailments. In the commentary to § 1B1.13[4] of the Sentencing Guidelines, which provides a policy statement regarding motions for compassionate release, the Sentencing Commission defines "extraordinary and compelling reasons" to include "[t]he incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse[.]" U.S.S.G. § 1B1.13 cmt. 1(C)(ii). Extraordinary and compelling grounds for compassionate release based on family circumstances "typically require[] a finding that the Defendant is the *only* available caregiver." *United States v. Corley*, 2021 WL 119640, at *1 (M.D. Tenn. Jan. 13, 2021) (emphasis added) (citing *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D. N.Y. 2020)); *see also United States v. Cole*, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021) ("district courts have routinely denied motions for compassionate release when the defendants cannot show that they would be the only available caregiver . . . even if their incarceration imposes substantial burdens on" other family members).

However, defendant's claim of extraordinary and compelling grounds for compassionate release based on his need to serve as the caretaker for his wife fails for two reasons. First, defendant has not met his burden of establishing that his wife is "incapacitated." Although defendant provides a letter from his wife stating that she is

---

[4] The Court notes that the Sixth Circuit has held that, when a prisoner seeks compassionate release himself, courts have full discretion to define "extraordinary and compelling" without consulting § 1B1.13's policy statement. *Jones*, 980 F.3d at 1111. However, while the Court acknowledges that it is not bound by § 1B1.13's policy statement, it nevertheless finds it appropriate to look to this policy statement, and law interpreting it, for guidance on this ground. *See Jarvis*, 999 F.3d at 446 (stating that the Sixth Circuit previously approved of a district court's approach of looking to the guidelines' policy statement for guidance in defining extraordinary and compelling reasons).

8

"disabled" and her sister had been helping her by taking her to doctor appointments, assisting in paying bills, and grocery shopping [Doc. 215-1, p. 10], and a handwritten list of his wife's purported illnesses [*Id.* at 11], he does not provide any medical records or other evidence of his wife's illnesses. In his reply brief, filed in September 2021, defendant stated that he was attempting to obtain his wife's medical records to attach as an exhibit [Doc. 221, p. 6], but, as of the date of this order, defendant has not filed any such records with the Court. Such failure to submit any medical records to corroborate his wife's condition are fatal to defendant's claim on this ground. *See United States v. Davis*, 2021 WL 829367, at *7 (E.D. Tenn. Mar. 4, 2021) (finding no extraordinary or compelling grounds for compassionate release based on familial medial conditions when defendant provided only a handwritten letter from his mother stating she suffered from certain conditions but providing no medical records to substantiate that his mother suffered from these conditions or that they rendered her incapacitated). Moreover, even if the Court assumes that defendant's wife's statements regarding her needs are true, she simply indicates that she needs assistance being taken to doctor appointments and grocery shopping but does not indicate that she cannot otherwise care for herself. Accordingly, defendant has not met his burden of establishing that his wife is incapacitated.

Second, defendant has not established that he is the only possible caretaker for his wife. Notably, in his initial motion, defendant merely indicated that he needed to serve as his wife's caretaker because her current caretaker, her sister, has been diagnosed with a terminal illness [Doc. 215, pp. 22–23]. Moreover, as of 2012, defendant reported to the

9

probation office, that her mother and father were both retired and living in Jefferson City, Tennessee, and she had two sisters, Cheryl Mason, living in Morristown, Tennessee, and Darlene Bivens, a homemaker, living in Lenoir City, Tennessee [Case No. 3:11-cr-113-2; PSR ¶¶ 47–48]. However, in his reply, he states that his wife "does not have a friend or relative who can provide permanent care for her" [Doc. 221, p. 6]. Nevertheless, the Court finds that defendant has not adequately shown that his wife's remaining family members are unable to provide similar caretaking services as Ms. Mason currently provides for Ms. Cole. Thus, even if defendant had established that his wife was incapacitated, which he has not, he nevertheless has not shown that he is the only available caretaker for his wife, and therefore, he has not established extraordinary and compelling grounds for compassionate release. Accordingly, defendant's motion will be denied.

### III. Conclusion

For the reasons set forth more fully above, defendant's motion for compassionate release [Doc. 215] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE